# EXHIBIT B

| | |
|---|---|
| **From:** | DJ Patent <djpatent@gmail.com> |
| **Sent:** | Monday, February 23, 2015 11:05 AM |
| **To:** | Matthew Kaufman |
| **Subject:** | Re: Patent Infringement Demand... |
| **Attachments:** | Blue_Box_Toys_Complaint.pdf; Exhibit_A_959_Patent.pdf; Exhibit_B_14117611493.pdf; Blue_Box_Claim_Chart.pdf; Product.pdf; All_Companies_ &_ Products_ 959.pdf |

Dear Mr. Kaufman,

This email is a reply to your 2.3.15 email. I apologies for the delay getting this information to you, but I have been in full negotiations with one other believed infringer and a significant amount of effort was directed to those negotiations.

I have decided to provide you with all relevant information you requested. I have also included a preliminary complaint which contains all relevant facts regarding this matter. I believe Blue Box's exposure to be very minimal and it would serve both of us well if this matter could be resolved without any formal fillings. I would be willing to forgo any and all claims with respect to the patent at issue, for a low five figure amount.

After you review the attached material, I would have no problem sending you a few settlement /licensing agreements I have already obtained to expedite this matter if your client is amendable.

Thanks,
David Joseph Catanzaro
570-282-4889

On Tue, Feb 3, 2015 at 3:16 PM, Matthew Kaufman <Kaufman@leasonellis.com> wrote:

Dear Mr. Joseph:


We are intellectual property counsel for Blue Box Toys, Inc. ("Blue Box") and have been provided with copies of your prior correspondence regarding alleged infringement by Blue Box products.  Your correspondence unfortunately lacks any indication as to the identity of the complaining party or the asset that is allegedly infringed.  Without such information, we are unable to make an independent determination as to the validity of your claim.  We accordingly require at least identification of the US patent number at issue before we are able to determine the proper course of action.  After receiving this information and having an opportunity to evaluate the merits of your claim, we would be in a position to determine if entering the proposed litigation standstill agreement is in the best interests of our client.


Please feel free to contact me if you are able to share any additional details that might assist us in evaluating your claim.

1

Warmest regards,


Matthew L. Kaufman

LEASON ELLIS.

One Barker Avenue

Fifth Floor

White Plains, New York 10601

kaufman@leasonellis.com

t. 914.821.3089

f. 914.288.0023


Please visit www.LeasonEllis.com.


This e-mail, including any attached files, may contain information that is privileged, confidential or otherwise exempt from disclosure and is solely for the intended recipient(s). Persons other than the intended recipient are prohibited from disclosing, distributing, copying or otherwise using this e-mail. If you received this e-mail in error, please notify the sender or call Leason Ellis' main number 914.288.0022 and delete it from your computer(s). Thank you.

IN THE UNITED STATES DISTRICT COURT
FOR THE…

| | |
|---|---|
| DAVID J. CATANZARO,<br>286 Upper Powderly Street<br>Carbondale, Pennsylvania  18407 | |
| | Case No. _____ |
| Plaintiff, | |
| | Judge_____ |
| | Magistrate  Judge _____ |
| VS. | |
| BLUE BOX TOYS INC.;<br>and DOES 1 THROUGH 50 | |
| | |
| Defendant. | JURY TRIAL DEMANDED |

**PLAINTIFF'S VERIFIED COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff, David J. Catanzaro ("Plaintiff" or "Mr. Catanzaro"), complains of Blue Box Toys, Inc. ("Blue Box Toys") as follows:

## I.    JURISDICTION.

1.    This is a claim for patent infringement under the patent laws of the United States, Title 35 of the United States Code.  This Court and other federal district courts have exclusive jurisdiction over the subject matter of this case under 28 U.S.C.§ 1338(a).

## II.    VENUE.

2.    Venue in this judicial district is proper under 28 U.S.C. §1391(b) and (c) in that this is the judicial district in which a substantial part of the acts and omissions giving rise to the claims occurred.  Further, venue is proper as to each defendant under 28 U.S.C. §1400(b).

## III.    PARTIES.

3.    Plaintiff currently resides at 286 Upper Powderly Street, Carbondale, Pennsylvania 18407. Plaintiff is the owner of United States Patent No. 7,653,959 B1 (the "'959 patent"), entitled "Article Assembly," that issued on February 2, 2010.  Plaintiff has the sole right to sue for infringement of said patent.  A copy of the '959 patent is attached hereto as **Exhibit A**.

4.    Upon information and belief, defendant Blue Box Toys is a NewJersey company with its principal place of business at 220 South Orange Ave., Suite #106 Livingston, NJ 07039

5.    Plaintiff does not know the true identities of fictitious Defendants Does 1 through 50, but reserves the right to amend this complaint to add said defendants upon discovery of their true identities.

6.    This court has personal jurisdiction over the named defendant.

## IV. RELEVANT MATTER

7.      The "959 patent is a continuation of  U.S. Patent No. 6,026,532 (the "532 patent") which was assigned to the Church & Dwight Co. on February 28, 2011, as part of a settlement agreement during a patent infringement lawsuit ( *David Catanzaro v. Procter & Gamble Co. et al.)*

8.      The '959 patent contained a Terminal Disclaimer whereby the Disclaimer stated that joint ownership of the '532 and '959 patent was required for the '959 patent to be enforceable.

9.      It is believed Church & Dwight allowed the '532 patent to expire intentionally in February, 2012 for lack of paying the required maintenance fee.

10.      Plaintiff filed a legal malpractice case in the Northern District of Ohio on May 2, 2013 against the attorneys who represented Plaintiff in the *Procter & Gamble Co. et al.* lawsuit (*Case No. 1:13 CV 996 Catanzaro vs. Seamon Garson et al*).

11.      Within the pleadings of the above stated malpractice case Plaintiff alleged that he was induced to enter into a Patent Purchases, Settlement Agreement which caused Plaintiff  to alienate his interest in the '532 patent and to give up his interest in the '959 patent.

12.      Defendants maintained that the '959 patent was still enforceable, and that Plaintiff did not lose the right to enforce the '959 patent as a direct result of the expiration of '532 patent.

13.      After near 20 months of litigation, Judge Dan A. Polster presiding Judge in the legal malpractice case, issued an order on December 15, 2014 (hereto as **Exhibit B**) stating that the court cannot issue an advisory opinion on the enforceability or

unenforceability of the '959 patent and demanded that a judicial determination or order must be made within the context of a Patent infringement lawsuit.

15.    Judge Dan A. Polster dismissed the case without prejudice and tolled the statue of limitations until there is a final judgment in a patent infringement litigation involving the '959 patent.

16.    As a direct result of information exchanged and obtained in the malpractice lawsuit, along with the directed order imposed by Judge Polster to obtain a final order in an infringement action to be able to reopen the malpractice case, Plaintiff  has 'sufficient reason' to presently assert that the '959 patent is enforceable from the time it issued on February 2, 2010 up-and-until its expiration date of December 30, 2016, with the exception being, from February 2011 through February 2012 when the '532 patent was enforceable by Church and Dwight.

## V.    CLAIMS.

## COUNT I – DECLARATORY JUDGMENT

17.    Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 16, inclusive.

18.    An actual, present and justiciable controversy has arisen between Plaintiff and Defendants regarding the '959 patent.

19.    Pursuant to 28 U.S.C. §§ 2201, *et seq*., Plaintiff seeks declaratory judgment from this Court that Defendant has infringed upon the '959 patent.

## COUNT II – PATENT INFRINGEMENT

20.     Blue Box Toys transacts business in this judicial district related to the '959

patent, without a license or permission from plaintiff.  Defendant has infringed, induced

others to infringe, and/or contributorily infringed, literally or under the doctrine of

equivalents, one or more claims of the '959 patent.  Defendant did so by manufacturing,

having manufactured, importing, using, offering for sale and/or selling products that

embody and/or practice the patented invention, known as "Jungle Friends Shape n' Sort"

product line.

22.     Defendant Blue Box Toys transacts business in this judicial district and has

committed acts of infringement in this judicial district by offering for sale and selling the

Jungle Friends Shape n' Sort product line after February 2, 2010.

23.     Plaintiff seeks damages for patent infringement against defendant for the maximum

period of time permitted by law.

24.     Defendant has directly infringed claims 1, 4, 5 & 8 of the '959 patent in violation of

35 U.S.C. § 271(a).  Upon information and belief, Defendant has also infringed claims 1, 4,

5 & 8 of the '959 patent by knowingly and actively inducing others to infringe in violation

of 35 U.S.C. § 271(b).

25.     Upon information and belief, Defendants infringement of the '959 patent have

been willful and deliberate.  Defendants infringement has injured plaintiff.

### VI.     PRAYER FOR RELIEF.

WHEREFORE, Plaintiff, David J. Catanzaro, respectfully requests that this Court

enter Judgment against Defendants and against their subsidiaries, successors, parents,

affiliates, directors, agents, servants, employees, and all persons in active concert or participation with them, granting the following relief:

A.    Issue a declaratory judgment stating that Defendants have infringed the '959 patent;

B.    Order an award of damages adequate to compensate Plaintiff for the infringement that has occurred, but in no event less than a reasonable royalty as permitted by 35 U.S.C. § 284, together with pre-judgment and post-judgment interest;

C.    Issue a finding that Defendants acts of infringement have been willful and ordering an award of increased damages as provided by 35 U.S.C. § 284;

D.    Order Defendants to pay plaintiff's reasonable attorney fees and costs of this action; and,

E.    Order such other relief that Plaintiff is entitled to under law and any other further relief that this Court or jury may deem just and proper.

## VII.    JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues presented in this complaint.

Respectfully submitted,

_____
David J. Catanzaro
Plaintiff *pro se*
286 Upper Powderly Street
Carbondale, PA 18407
Phone: (570) 282-4889
E-mail: davidjosephus@aol.com

6

US007653959B1

(12) **United States Patent**
Catanzaro

(10) Patent No.: **US 7,653,959 B1**
(45) Date of Patent: **Feb. 2, 2010**

(54) **ARTICLE ASSEMBLY**

(76) Inventor: **David Catanzaro**, 626 Penn Ave., Mayfield, PA (US) 18433

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 0 days.

(21) Appl. No.: **09/505,791**

(22) Filed: **Feb. 17, 2000**

**Related U.S. Application Data**

(63) Continuation of application No. 08/777,032, filed on Dec. 30, 1996, now Pat. No. 6,026,532.

(51) **Int. Cl.**
*A46B 9/04* (2006.01)

(52) **U.S. Cl.** ..................... **15/167.1**; 15/184; 15/143.1; 15/257.01; D4/108; D4/107; D6/534; 248/111; 248/908; 132/308

(58) **Field of Classification Search** ................. D4/104, D4/107, 108, 125, 126; D6/528, 534; 15/167.1, 15/143.1, 184, 257.01, 146, 246; 248/163.1, 248/188.8, 188.9, 110, 111, 915, 908; 132/308, 132/309; 206/362.3, 349, 457
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | | |
|---|---|---|---|---|
| D155,668 | S | * | 10/1949 | Zandberg et al. ............. D4/107 |
| 2,539,035 | A | * | 1/1951 | Scanlon et al. .............. 248/111 |
| D197,309 | S | * | 1/1964 | Feverbacher ................ D4/107 |
| 3,138,813 | A | * | 6/1964 | Kaplan ........................ 15/22 |
| 3,140,782 | A | * | 7/1964 | Schulte ...................... 248/908 |
| D209,574 | S | * | 12/1967 | Zandberg et al. ............ D4/107 |
| D279,248 | S | * | 6/1985 | Oliver ........................ D6/104 |
| 5,269,420 | A | * | 12/1993 | Harrison et al. .......... 206/362.3 |
| 5,353,464 | A | * | 10/1994 | Atkins et al. .............. 15/167.1 |
| 5,444,889 | A | * | 8/1995 | Barre ........................ 15/167.1 |
| D363,166 | S | * | 10/1995 | Perrine .................... D4/104 |
| D369,932 | S | * | 5/1996 | Petronio .................... D6/534 |
| D370,146 | S | * | 5/1996 | Petronio .................... D6/534 |
| D370,147 | S | * | 5/1996 | Petronio .................... D6/534 |
| 5,590,436 | A | * | 1/1997 | Wright ...................... 15/105 |
| 5,675,859 | A | * | 10/1997 | Barre ........................ 15/167.1 |
| D388,254 | S | * | 12/1997 | Schiffer .................... D4/107 |
| D392,464 | S | * | 3/1998 | Jesiolowski ................ D4/107 |
| D395,757 | S | * | 7/1998 | Schiffer .................... D4/107 |
| 6,015,328 | A | * | 1/2000 | Glaser ...................... 15/167.1 |
| 6,026,532 | A | * | 2/2000 | Catanzaro ................ 15/167.1 |
| 6,141,815 | A | * | 11/2000 | Harrison et al. ............. 15/145 |

OTHER PUBLICATIONS

Pictures of SALTON Inc. foot stand, stand includes a copyright mark of 1990.*
Pictures of SALTON Inc. foot stand, stand was on sale in Mar. 1999.*

* cited by examiner

*Primary Examiner*—Gary K. Graham

(57) **ABSTRACT**

An assembly comprising a toothbrush having a first and second end. A stand in the shape of a pair of feet retains the brush in a vertical position when the stand is placed on a horizontal surface. For additional support, a base may be incorporated with the stand.

**8 Claims, 2 Drawing Sheets**







FIG.4

FIG.5

US 7,653,959 B1

**1**

# ARTICLE ASSEMBLY

This application is a continuation of U.S. Utility Application 08/777,032, filed on Dec. 30, 1996, now U.S. Pat. No. 6,026,532. The earlier filing date of this application is hereby claimed under 35 U.S.C 120.

## BACKGROUND OF THE INVENTION

1. Field of the Invention

This application claim benefit to provisional Application 60/009,323 Dec. 28, 1995.

The instant invention relates generally to toothbrushes, but may also find a useful application in other types of methods differing from the type described herein. More specifically it relates to an assembly which may contain a combination of appealing qualities.

2. Description of the Prior Art

There are various advantages in storing a toothbrush in an upright position, and numerous patents have disclosed holders or stands for retaining a toothbrush in a vertical position when placed on a horizontal surface. For instance, U.S. Pat. No. 5,444,889 (Barre) discloses a toothbrush assembly including a toothbrush and a stand for holding the brush. The stand includes a cup portion having a cavity within, wherein the brush handle can be inserted. A pair of legs separate and unattached to one another support and are connected to the cup portion. Further included is a foot for each leg, each foot being connected to the lower end of the leg opposite the cup portion. The feet are also separate and unattached from one another. U.S. Pat. Des. 369,932 and U.S. Pat. Des. 370,147 (Petronio) discloses a toothbrush holder in the shape of a torso having a front and rear portion. The front portion includes a recess extending therethrough, wherein a brush handle can be inserted, Further included, extending from the front portion, is a pair of feet which are separate and unattached from one another. A tail section extends from the rear portion. While these units may be suitable for the particular purpose to which they address, they would not be suitable for the purposes of the present invention as heretofore described.

## SUMMARY OF THE INVENTION

A first object of the present invention is to provide an assembly that will overcome the shortcomings of the prior art devices.

A second object is to provide an assembly, comprising a toothbrush having a first and second end, and a stand for receiving the second end of the brush handle therein, thereby retaining the handle in a vertical position when the stand is placed on a horizontal surface.

A third object is to provide an assembly, in which the stand is releasably connected to the toothbrush handle.

A forth object is to provide an assembly, in which the stand is a pair of feet which are positioned together to form a continuous bottom supporting surface and a single heel portion, wherein the single heel portion includes a recess for selectively receiving the second end of the toothbrush handle therein.

A fifth object is to provide an article assembly, in which a base is connected to the bottom side of the foot stand for providing additional stability to the foot stand.

A sixth object is to provide an article assembly, in which the base includes a recess extending therethrough and in alignment with the recess in the foot stand for additionally receiving the receivable end of the article therein, for providing additional stability to the foot stand and article.

**2**

A seventh object is to provide an article assembly, that is simple and easy to use.

An eight object is to provide an article assembly, that is economical in cost to manufacture.

Further objects of the invention will appear as the description proceeds.

To the accomplishment of the above and related objects, this invention may be embodied in the form illustrated in the accompanying drawings, attention being called to the fact, however, that the drawings are illustrative only, and that changes may be made in the specific construction illustrated and described within the scope of the appended claims.

## BRIEF DESCRIPTION OF THE DRAWING FIGURES

FIG. **1** is a front exploded perspective view of the assembly according to the present invention.

FIG. **2** is a front exploded perspective view of the assembly according to the present invention showing a base for the stand.

## DETAILED DESCRIPTION OF THE PREFERRED EMBODIMENTS

With regard to FIGS. **1** and **2**, the embodiment of the invention drawn shows an elongated handle **1** having a first end **2** a second end **3** and a first and second side. A stand **5** is in the shape of first and second feet **6a** and **6b**. Each first and second feet **6a** and **6b**, are elongated to define a toe end and together a common heel end. First and second feet **6a** and **6b** are joined together and positioned together to form a continuous bottom supporting surface. The heel end of each first and second feet **6a** and **6b**, is positioned together to form a single heel portion **7**. Single heel portion **7** includes a recess **8** extending through a top side thereof and towards a sole thereof for selectively receiving second end **3** of handle **1** therein, thereby retaining handle **1** in a vertical position when stand **5** is placed on a horizontal surface. First and second feet **6a** and **6b** each include a side surface, the side surfaces intersect one another in a common plane. The toe end of first and second feet **6a** and **6b** are at an acute angle to one another.

If desired, a base **9** could be connected to a bottom side of stand **5** as shown in FIG. **2**. Base **9** may include a recess **10** extending therethrough and in alignment with recess **8** in stand **5** for additionally receiving second end **3** of handle **1** therein, to provide additional stability to handle **1** and stand **5**.

It will be understood that each of the elements described above, or two together, may also find a useful application in other types of methods differing from the type described above.

While certain novel features of this invention have been shown and described are pointed out in the annexed claims, it is not intended to be limited to the details above, since it will be understood that various omissions, modifications, substitutions and changes in the forms and details of the device illustrated and in its operation can be made by those skilled in the art without departing in any way from the sprit of the present invention.

Without further analysis, the foregoing will so fully reveal the gist of the present invention that others can, by applying current knowledge, readily adapt it for various applications without omitting features that, from the standpoint of prior art, fairly constitute essential characteristics of the generic aspects of this invention.

US 7,653,959 B1

3

What is claimed is new and desired to be protected by Letters Patent is set forth in the appended claims:

**1**. An article assembly comprising:

a) an article having a receivable end, and

b) a stand in the shape of first and second feet, each of said first and second feet being elongated to define a toe end and together a common heel end, said first and second feet being joined together and positioned together to form a continuous bottom supporting surface, said heel end of each of said first and second feet being positioned together to form a single heel portion, said single heel portion including a recess extending through a topside thereof and towards a sole thereof for selectively receiving said receivable end of said article therein, thereby retaining said article when said stand is placed on a horizontal surface, said first and second feet each including a side surface, said side surfaces intersecting one another in a common plane.

**2**. The article assembly as claimed in claim **1**, further comprising a base connected to a bottom side of said stand.

**3**. The article assembly as claimed in claim **2**, wherein said base includes a recess extending therethrough and in alignment with said recess in said stand for additionally receiving said receivable end of said article therein.

4

**4**. The article assembly as claimed in claim **1**, wherein said toe end of said first and second feet are at an acute angle to one another.

**5**. An article assembly comprising:

A stand in the shape of first and second feet, each of said first and second feet being elongated to define a toe end and together a common heel end, said first and second feet being joined together and positioned together to form a continuous bottom supporting surface, said heel end of each of said first and second feet being positioned together to form a single heel portion, said single heel portion including a recess extending through a topside thereof and towards a sole thereof, said first and second feet including a side surface, said side surfaces intersecting one another in a common plane.

**6**. The article assembly as claimed in claim **5**, further comprising a base connected to a bottom side of said stand.

**7**. The article assembly as claimed in claim **6**, wherein said base includes a recess extending therethrough and in alignment with said recess in said stand.

**8**. The article assembly as claimed in claim **5**, wherein said toe end of said first and second feet are at an acute angle to one another.

*   *   *   *   *

UNITED STATES PATENT AND TRADEMARK OFFICE
# CERTIFICATE OF CORRECTION

PATENT NO.          : 7,653,959 B1                                          Page 1 of 3
APPLICATION NO. : 09/505791
DATED                 : February 2, 2010
INVENTOR(S)        : Catanzaro

It is certified that error appears in the above-identified patent and that said Letters Patent is hereby corrected as shown below:

The title page, showing an illustrative figure, should be deleted and substitute therefor the attached title page.

Delete drawing sheets 1-2 and substitute therefor the drawing sheet, consisting of figures 1-2 as shown on the attached page.

Signed and Sealed this

Eighteenth Day of May, 2010

David J. Kappos
*Director of the United States Patent and Trademark Office*

CERTIFICATE OF CORRECTION (continued)                    Page 2 of 3

(12) **United States Patent**                    (10) **Patent No.:**     **US 7,653,959 B1**

Catanzaro                                        (45) **Date of Patent:**     **Feb. 2, 2010**

(54)  **ARTICLE ASSEMBLY**

(76)  Inventor:   **David Catanzaro**, 626 Penn Ave.,
                  Mayfield, PA (US) 18433

( * )  Notice:   Subject to any disclaimer, the term of this
                 patent is extended or adjusted under 35
                 U.S.C. 154(b) by 0 days.

(21)  Appl. No.: **09/505,791**

(22)  Filed:     **Feb. 17, 2000**

**Related U.S. Application Data**

(63)  Continuation of application No. 08/777,032, filed on
      Dec. 30, 1996, now Pat. No. 6,026,532.

(51)  **Int. Cl.**
      *A46B 9/04*          (2006.01)

(52)  **U.S. Cl.** ...................... **15/167.1**; 15/184; 15/143.1;
      15/257.01; D4/108; D4/107; D6/534; 248/111;
      248/908; 132/308

(58)  **Field of Classification Search** ................. D4/104,
      D4/107, 108, 125, 126; D6/528, 534; 15/167.1,
      15/143.1, 184, 257.01, 146, 246; 248/163.1,
      248/188.8, 188.9, 110, 111, 915, 908; 132/308,
      132/309; 206/362.3, 349, 457
      See application file for complete search history.

(56)               **References Cited**

U.S. PATENT DOCUMENTS

| | | | | |
|---|---|---|---|---|
| D155,668 | S | * | 10/1949 | Zandberg et al. ............. D4/107 |
| 2,539,035 | A | * | 1/1951 | Scanlon et al. ............. 248/111 |
| D197,309 | S | * | 1/1964 | Feverbacher ................. D4/107 |
| 3,138,813 | A | * | 6/1964 | Kaplan ........................ 15/22 |
| 3,140,782 | A | * | 7/1964 | Schulte ..................... 248/908 |
| D209,574 | S | * | 12/1967 | Zandberg et al. ............ D4/107 |
| D279,248 | S | * | 6/1985 | Oliver ...................... D6/104 |
| 5,269,420 | A | * | 12/1993 | Harrison et al. .......... 206/362.3 |
| 5,353,464 | A | * | 10/1994 | Atkins et al. .............. 15/167.1 |
| 5,444,889 | A | * | 8/1995 | Barre ...................... 15/167.1 |
| D363,166 | S | * | 10/1995 | Perrine ..................... D4/104 |
| D369,932 | S | * | 5/1996 | Petronio ................... D6/534 |
| D370,146 | S | * | 5/1996 | Petronio ................... D6/534 |
| D370,147 | S | * | 5/1996 | Petronio ................... D6/534 |
| 5,590,436 | A | * | 1/1997 | Wright ...................... 15/105 |
| 5,675,859 | A | * | 10/1997 | Barre ...................... 15/167.1 |
| D388,254 | S | * | 12/1997 | Schiffer .................... D4/107 |
| D392,464 | S | * | 3/1998 | Jesiolowski ................. D4/107 |
| D395,757 | S | * | 7/1998 | Schiffer .................... D4/107 |
| 6,015,328 | A | * | 1/2000 | Glaser ..................... 15/167.1 |
| 6,026,532 | A | * | 2/2000 | Catanzaro .................. 15/167.1 |
| 6,141,815 | A | * | 11/2000 | Harrison et al. ............. 15/145 |

OTHER PUBLICATIONS

Pictures of SALTON Inc. foot stand, stand includes a copyright mark
of 1990.*
Pictures of SALTON Inc. foot stand, stand was on sale in Mar. 1999.*

* cited by examiner

*Primary Examiner*—Gary K. Graham

(57)               **ABSTRACT**

An assembly comprising a toothbrush having a first and second end. A stand in the shape of a pair of feet retains the brush in a vertical position when the stand is placed on a horizontal surface. For additional support, a base may be incorporated with the stand.

**8 Claims, 1 Drawing Sheet**






FIG.1

FIG.2

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| DAVID CATANZARO, | ) | CASE NO. 1:13CV996 |
| | ) | |
| Plaintiff, | ) | JUDGE DAN AARON POLSTER |
| | ) | |
| vs. | ) | <u>ORDER</u> |
| | ) | |
| SEAMAN GARSON LLC/LLP, et al., | ) | |
| | ) | |
| Defendants. | ) | |

On May 2, 2013, Plaintiff David Catanzaro initiated a legal malpractice action against the Defendants by filing a Complaint in this Court. Catanaro alleges that he suffered damages as a result of the Defendants' "failure to properly represent" him in a patent infringement action that he filed in the Middle District of Pennsylvania, *Catanzaro v. Procter & Gamble*, et al, Case No. 3:09cv2231 (the "Pennsylvania Action"). Specifically, Plaintiff alleges that he was induced to enter into a Patent Purchases, Assignment and Settlement Agreement which caused him to alienate his interest in U.S. Patent No. 6, 026,532 ("the '532 Patent") and give up his interest in a continuation patent, U.S. Patent No. 7, 653,959 ("the '959 Patent"). As part of this settlement agreement, Plaintiff alleges that he was advised by his lawyers to agree to "sell and assign all right, title and interest in the '532 Patent to Church and Dwight" and to grant a non-exclusive use license to Proctor & Gamble and Church & Dwight under the '959 Patent.

Plaintiff alleges that after the parties settled the Pennsylvania Action he continued to bring infringement claims in connection with the '959 patent. Plaintiff alleges that in May 2012, while he was negotiating an infringement claim against Elmer's Products, Inc., ("Elmer") he was

informed by Elmer's attorney that he lost his rights in the '959 Patent. According to Catanzaro, the attorney told him that the '959 Patent had a "Terminal Disclaimer" which rendered his '959 Patent unenforceable because it required that the '532 and '959 Patents be jointly owned. Based on what this attorney allegedly told him, Catanzaro filed the instant malpractice case, contending that Defendants never advised him he would lose the right to enforce his '959 Patent when he settled the Pennsylvania Action.

The Court has determined that this case cannot be litigated in its current posture. Plaintiff Catanzaro is seeking damages from his former counsel for the loss of his '959 Patent rights, alleging that his patent is no longer enforceable due to the Terminal Disclaimer. The problem with this claim is that there has been no judicial determination that Catanzaro cannot enforce the '959 Patent. Defendants maintain that the patent is still enforceable, and until recently, Catanzaro has been enforcing it.

Federal courts cannot issue advisory opinions. *See Bowler v. Young,* 55 F. App'x 187, 188 (4th Cir. 2003) ( "In order for a federal court to exercise jurisdiction over an action, the dispute must satisfy the case or controversy requirement of Article III of the Constitution. A case or controversy exists if the dispute is definite and concrete, touching the legal relations of parties having adverse legal interests. [T]he court may not issue what amounts to an advisory opinion on what the law would be under a hypothetical set of facts."). As part of his case, Catanzaro wants this court to invalidate his '959 Patent, or to hold that he has lost the right to enforce it, but there is nobody in this case who is allegedly infringing his patent and maintaining that Catanzaro has lost his right to enforce it. To be entitled to damages against his former counsel, Catanzaro must demonstrate that he has lost the right to enforce his patent due to Defendants' malpractice in

-2-

connection with the Terminal Disclaimer.  Since Defendants maintain that Catanzaro has not lost

the right to enforce his '959 Patent, the only way this issue can be decided is through a true

adversarial proceeding, one in which the plaintiff (Catanzaro) seeks to enforce his patent, and the

defendant (someone using Catanzaro's patent) defends on the basis that Catanzaro has lost the

right to enforce it.  If Catanzaro prevails in his patent litigation, his malpractice case against his

former attorneys evaporates.   If a court should determine in the patent litigation that Catanzaro

cannot enforce the '959 Patent on some basis other than the Terminal Disclaimer, Catanzaro's

malpractice case against his former attorneys also evaporates.   If, however, Catanzaro loses his

patent enforcement case on the basis of the Terminal Disclaimer, then he has a basis to refile his

malpractice case against his former attorneys.

Accordingly, this case is dismissed without prejudice.  The Court tolls the statute of

limitations as of today for a period of six months (June 12, 2015) to permit Catanzaro to file

a patent enforcement action against an alleged infringer.  Should Catanzaro file such an action,

the tolling of the statute of limitations will remain in place until there is a final judgment in the

patent enforcement litigation.


IT IS SO ORDERED.


*/s/ Dan A. Polster    December 15, 2014*
**Dan Aaron Polster**
**United States District Judge**

INFRINGEMENT CONTENTIONS -- U.S. 7,653,959 B1

| Claim 1 | Defendants "Jungle Friends Shape n' Sort"<br><br>Article Assembly |
|---|---|
| An Article Assembly Comprising: | Yes. The product is an article assembly. |
| a) an article having a receivable end, and | Yes. The article assembly has an article with a receivable end. |
| b) a stand in the shape of first and second feet, | Yes. The article assembly has a stand in the shape of first and second feet. |
| each of said first and second feet being elongated to define a toe end and together a common heel end, | Yes. Each of the first and second feet are elongated to define a toe end and together a common heel end. |
| said first and second feet being joined together and positioned together to form a continuous bottom supporting surface, | Yes. Each of the first and second feet are joined together and positioned together to form a continuous bottom supporting structure. |
| said heel end of each of said first and second feet being positioned together to form a single heel portion, | Yes. The heel end of each of the first and second feet are positioned together to form a single heel portion. |
| said single heel portion including a recess extending through a topside thereof and towards a sole thereof for selectively receiving said receivable end of said article therein, | Yes. The single heel portion includes a recess extending through a topside thereof and towards a sole thereof for selectively receiving the receivable end of the article therein. |
| Thereby retaining said article when said stand is placed on a horizontal surface, | Yes. The article is retained when the stand is placed on a horizontal surface. |
| said first and second feet including a side surface, | Yes. The first and second feet include a side surface. |
| said side surfaces intersecting one another in a common plane. | Yes. The side surfaces intersect one another in a common plane. |

| Claim 5 | Defendants "Jungle Friends Shape n' Sort" |
| --- | --- |
| | Article Assembly |
| An Article Assembly Comprising: | Yes.  The product is an article assembly. |
| A stand in the shape of first and second feet, | Yes.  The article assembly has a stand in the shape of first and second feet. |
| each of said first and second feet being elongated to define a toe end and together a common heel end, | Yes.  Each of the first and second feet are elongated to define a toe end and together a common heel end. |
| said first and second feet being joined together and positioned together to form a continuous bottom supporting surface, | Yes.  Each of the first and second feet are joined together and positioned together to form a continuous bottom supporting structure. |
| said heel end of each of said first and second feet being positioned together to form a single heel portion, | Yes.  The heel end of each of the first and second feet are positioned together to form a single heel portion. |
| said single heel portion including a recess extending through a topside thereof and towards a sole thereof, | Yes.  The single heel portion includes a recess extending through a topside thereof and towards a sole thereof. |
| said first and second feet including a side surface, | Yes.  The first and second feet include a side surface. |
| said side surfaces intersecting one another in a common plane. | Yes.  The side surfaces intersect one another in a common plane. |

| Claim 4 | Defendants "Jungle Friends Shape n' Sort" |
| --- | --- |
| | Article Assembly |
| The article assembly as claimed in claim 1, wherein said toe end of said first and second feet are at an acute angle to one another. | Yes. The Accused Products have all of the limitations of claim 1 and has a toe end of the first and second feet that are at an acute angle to one another. |

| Claim 8 | Defendants "Jungle Friends Shape n' Sort" |
| --- | --- |
| | Article Assembly |
| The article assembly as claimed in claim 5, wherein said toe end of said first and second feet are at an acute angle to one another. | Yes. The Accused Product has all of the limitations of claim 5 and has a toe end of the first and second feet that are at an acute angle to one another. |

- 3 -

**Jungle Friends Shape n' Sort Product**





Companies that entered into agreements under the US 7,653,959 B1 patent and their associated products

| Procter & Gamble Co. and Church & Dwight Co. | Knex Brand L.P. | Bee International | JAKKS Pacific, Inc. | Hasbro, Inc. | Elmer's Products, Inc. | LaRose Industries, LLC | Crayola LLC | Avon Products, Inc. |
|---|---|---|---|---|---|---|---|---|
| Spinbrush (Several Versions) | Sesame Street Collection (All Varieties) | Sports Buddies | Club Penguin (All Varieties) | Play-Doh EZ 2 DO Silly Friends | Fuzzoodles (All Varieties) | CRA-Z-ART Softee Dough | My First Crayola (All Varieties) | Kids Brush & Comb Set |